38587. McGINNIS v. THE STATE.

DECIDED NOVEMBER 15, 1960—REHEARING DENIED NOVEMBER 30, 1960.

*Albert A. Roberts,* for plaintiff in error.

*Chastine Parker, Solicitor-General, Horace T. Clary, Assistant Solicitor-General,* contra.

TOWNSEND, Presiding Judge. John McGinnis was indicted in the Superior Court of Floyd County on two counts of larceny of an automobile. His trial resulted in acquittal on one count and conviction on the other. He assigns error here on the overruling of his motion for a new trial on the general grounds.

James Bradley testified for the State that he was an appliance repairman living in Forest Park, Georgia; that he had known the defendant for about a year and visited frequently in his home; that a day or so after he first met the defendant it was agreed that the defendant would deliver him a new 1959 Ford automobile for $1,000, to be paid for $500 in cash, and a boat, trailer and motor; that Bradley paid the $500 and then waited two or three weeks, during which time he became apprehensive; that McGinnis called him the evening of April 20th, to say the car was being delivered; that he and McGinnis went from Forest Park to the Bankhead Highway, where they met A. H. Davis driving a truck; that they went to a grille, and Charles Williamson arrived with a two-tone bronze hardtop Ford, identified as having been stolen from the car lot of Julian Harrison, Inc., in Rome. The next day the defendant delivered to him a bill of sale for the automobile. Bradley testified that at the time he did not know the Ford was stolen, but he was instructed by McGinnis and Davis to have it insured before he purchased it, and about two weeks after the purchase McGinnis told him the car was "hot" and that "Davis or Charlie would take it." Bradley saw the car being driven away from his home soon thereafter, reported the matter to the police, and attempted to collect the insurance. It was later recovered in Roswell in the possession of Jack Richards.

A. H. Davis testified that he, Williamson, and McGinnis were engaged in automobile thefts; that the manner in which they operated was that McGinnis would find a prospective customer who wanted a particular type of car, and that he and William-

son would steal the car and deliver it to McGinnis; that McGinnis informed them Bradley wanted a 1959 Ford Galaxie; that they went to the lot of Julian Harrison, Inc., on the afternoon of April 21, checked the car and determined the key number, drove to Summerville where they had a key made; returned to Rome after dark and drove the automobile off the parking lot, Williamson driving and Davis following in a pickup truck. McGinnis paid them $500 before the car was stolen. They changed the license tags for tags previously stolen by them in Alabama. On arriving in Grove Park Davis telephoned the defendant to say the car had arrived, and McGinnis and Bradley then met them on Bankhead Avenue and Bradley took delivery of the car. Later Davis and Williamson with Bradley's cooperation (he having given them the keys a day or two before) took the car from in front of his house and drove it to Jesup, where it was left for a while until it was involved in a collision. It was then taken to Roswell by Harbin, a man Davis had met through McGinnis, and Davis then on McGinnis' instructions went to a Mr. Richards, in whose possession it was, and received $800, which he divided with McGinnis and the boy who drove the car. He also delivered to Richards a bill of sale for the automobile which had been typed up by the defendant. Davis' testimony that the license tag used on the Ford had been stolen in Alabama was confirmed by testimony that the number of the license tag shown on the bill of sale given Bradley by McGinnis was the same as one stolen from a Ford in Opelika, Alabama. His testimony that he, Williamson, and McGinnis operated a theft ring for which McGinnis furnished the bills of sale was corroborated by the testimony of an expert witness that the bill of sale purportedly made by Hawkins to Bradley, and the one purportedly made by Chambers to Richards, for the Ford automobile in question, were typed on the same typewriter. There were other corroborative details as to the attempt to remove certain numbers from the frame of the Ford automobile.

The testimony of the two main witnesses for the State shows clearly a conspiracy between the defendant and others to deal in stolen automobiles, the method of operation of which was that the defendant, after finding a prospective purchaser, would

then notify the witness and another what type automobile should be stolen. He would pay them in advance for this service, and would then prepare and deliver to the "purchaser" a bill of sale with the name of a fictitious vendor thereon. One who procures another to commit a larceny, and receives and retains a portion of the proceeds, is guilty as a principal. *Folsom v. State,* 11 Ga. App. 199 (74 S. E. 939). Equally where one steals and another assists in the asportation, he is guilty as a principal. *Dye v. State,* 77 Ga. App. 517 (48 S. E. 2d 742). The testimony of Bradley in this case was that he did not originally know the automobile was stolen, but, after discovering this fact, cooperated with the thieves and also attempted fraudulently to recover on his automobile insurance policy; however, Davis' testimony makes Bradley an accomplice in that he knew the Ford was to be stolen before he received it. Assuming, then, that Bradley was an accomplice, this does not detract from the efficacy of the testimony since the testimony of one accomplice may be sufficiently corroborated by the testimony of another accomplice to authorize conviction. *Rozier v. State,* 68 Ga. App. 797 (24 S. E. 2d 137). The general grounds of the motion for new trial are without merit.

The trial court did not err in overruling the motion for new trial.

*Judgment affirmed. Carlisle, Frankum and Jordan, JJ., concur.*